ALFEO TOZZI, d/b/a Alfeo Tozzi Interiors, Plaintiff-Appellant, *v.* JIM TESTA, d/b/a Jim Testa Construction Company, Defendant-Appellee.

Third District    No. 80-611

Opinion filed July 7, 1981.

Douglas L. Ziech, of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellant.

Robert R. Gorbold, of Thomas, Wallace, Feehan and Baron, Ltd., of Ottawa, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, Alfeo Tozzi Interiors, brought an action against the defendant, Jim Testa d/b/a Jim Testa Construction Company, in the Circuit Court of Will County for damages resulting from a fire. After trial by jury a verdict was returned in favor of the defendant and a special interrogatory submitted to the jury as to whether or not the plaintiff was guilty of contributory negligence was answered in the affirmative.

The litigation between the parties to this appeal had its inception when Ricardo Tozzi, son, manager, and vice president of the plaintiff business, employed the defendant to construct a metal carpet rack system in the plaintiff's warehouse. Initially a bolted metal rack was to be installed; however, the defendant, a welder by trade, recommended that the rack be built by welding angle iron together. This recommendation was followed and the defendant, working evenings and on Saturday,

commenced the project sometime in the latter part of February or early part of March of 1978. On the night of April 3, 1978, after the defendant had been working for approximately 1½ hours, certain padding located in the work area was ignited by sparks which occur from an arc welding operation. The defendant and Alfeo Tozzi were unable to control the fire, which raged until extinguished by the fire department. As a result of the fire the warehouse and a considerable amount of the merchandise contained therein, *i.e.*, furniture, carpeting and drapery material, was damaged. Some of the damage was from the fire itself and some from smoke and water damage. A further recitation of the facts will be set forth as they become pertinent to the issues raised in this appeal.

The plaintiff first asserts that the trial court erred when it failed to grant the plaintiff's motion for a directed verdict and judgment notwithstanding the verdict. It is also the contention of the plaintiff that the jury's verdict and its answer to the "contributory negligence" interrogatory are contrary to the manifest weight of the evidence. These two issues will be considered together since the requisite factual analysis of the evidence is the same as to each issue as are the standards of law to be applied.

Testimony adduced at trial disclosed that the defendant Testa is a self-employed, professional welder and that he had been a welder for 13 years. Due to other job commitments it was agreed that Testa would build the rack for the plaintiff by working evenings and on Saturdays. For his work Testa was to be paid $22 per hour and to be reimbursed for materials which he purchased. There was an agreement or understanding between the parties that the Tozzis, father and son, would assist Testa by carrying tools and angle iron and holding them in place as the same were being welded. It was Testa's testimony that the Tozzis would also serve as fire watchers. The Tozzis deny that there was ever any conversation concerning the subject of fire watchers. The matter of "fire watchers" was first injected into the case by the testimony of Testa at the trial. Prior to trial when Testa's deposition was taken the duty of the Tozzis as helpers was described as follows:

"Question: What did their labor consist of?

Answer: Carry stuff, carry angles, hold the angle open while I welded them."

There was further testimony by Testa that he and the Tozzis moved merchandise away from the areas where he was to weld. The testimony on this subject is as follows:

"Question: You told the Tozzis where to move the stuff?

Answer: Not directly. We—kind of a joint venture. What I thought was far enough, what they thought was far enough, and we moved it."

We further deem the following testimony of the defendant Testa pertinent:

"Question: Prior to the fire, Mr. Testa, did either Al Tozzi or Rick Tozzi ask you whether there was any danger as to fire?

Answer: Yes.

Question: When you were welding?

Answer: Yes.

Question: Tell the jury about that conversation.

Answer: They asked me if there was any danger and I said there is always a little danger, but I had worked in worse places than that."

It was Testa's testimony that during the evening when the fire occurred it was not necessary to move any materials and that he did not ask the Tozzis to do so, and that he did not cover any material with any type of canvas or tarpaulins or take any precautions against a possible fire. The pads which ignited and caused the fire were described as being either styrofoam or polyurethane and were located under the rack which was being constructed.

The court substitutes its judgment for that of the jury with reluctance and only in cases where failure to do so would result in a grave injustice. We are mindful of the rule in *Pedrick*, which is:

"* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

This rule does not mean that the introduction of some evidence favoring the nonmovant is sufficient to prevent the directing of a verdict or the entering of a judgment *n.o.v.* Our supreme court in *Pedrick* also stated:

"But the presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all the evidence, retain such significance. * * * Constitutional guaranties are not impaired by direction of a verdict despite the presence of some slight evidence to the contrary." 37 Ill. 2d 494, 504-05, 229 N.E.2d 504, 510.

In the instant case, following the rule in *Pedrick* and viewing the evidence in a light most favorable to the defendant leads to the conclusion that the defendant Testa failed to exercise the degree of care required of an experienced structural steel welder. It was his negligence in failing to take any precautions whatsoever against a possible fire which caused the

damage suffered by the plaintiff. The defendant attempts to impute negligence to the plaintiff by asserting that the Tozzis were to serve as fire watchers. Evidence on this subject is conflicting, but assuming *arguendo* that the Tozzis were to be fire watchers, the defendant assured them that they need not worry about a fire. He knew that such a possibility existed yet failed to use the care commensurate with a known possible danger. See *City of Flora ex rel. Liberty Mutual Insurance Co. v. Bryden* (1938), 300 Ill. App. 1, 21 N.E.2d 323, wherein it was stated:

> "He [the defendant] was engaged in a hazardous occupation, known to him to be so. It was known to him and his men that such things as chipping steel happen in connection with the occupation in which they were engaged. In fact it is a matter of common knowledge. * * * The books are replete with cases of similar character from all jurisdictions, holding that men engaged in an occupation must in the carrying on of that occupation, use care commensurate with the known danger." 300 Ill. App. 1, 8-9, 21 N.E.2d 323, 326.

The plaintiff, while having no familiarity whatsoever with arc welding, was nevertheless concerned about the possibility of a fire, but relying upon the expertise of the defendant, his fear was allayed. Being assured by the defendant that there was nothing to worry about, there was no reason for the plaintiff, Alfeo Tozzi, to be present while the defendant welded. We fail to find any basis for the jury's determination that the plaintiff was guilty of contributory negligence.

■■ We can only conclude that the jury should have been directed to find for the plaintiff on the issue of liability and that subsequently error was committed when the trial court refused to enter a judgment *n.o.v.* for the plaintiff after the jury returned its verdict.

The judgment entered in favor of the defendant is reversed and this case is remanded to the Circuit Court of Will County with directions to enter a judgment in favor of the plaintiff and for a new trial on the issue of damages.

Throughout the trial of this case counsel for the parties differed sharply as to the law concerning the valuation of the many articles of personal property which were destroyed by the fire. The plaintiff contends that the measure of damages for personal property which was destroyed is the reasonable value or worth of such property at the time and place of its destruction. He further argues that "reasonable value" has been interpreted as the fair market value of such property or that value which a willing purchaser would pay to a willing seller in a voluntary transaction. The defendant contended otherwise and the trial court, agreeing with the defendant, directed the plaintiff to put on evidence only of the "wholesale replacement cost" of the destroyed items.

■■■ At first blush the "wholesale replacement cost" appears to be the correct valuation for such property since this amount would be what the plaintiff actually paid for the various items of furniture and furnishings. In short, the plaintiff would be reimbursed for the out-of-pocket cash loss which he suffered as the result of the destruction of the various pieces of personal property. However, the "wholesale replacement cost" valuation does not stand the test when closely examined. The plaintiff in this case is a merchant engaged in the selling of home furnishings, *i.e.*, tables, chairs, carpeting, draperies, etc. To apply the "wholesale replacement cost" fails to take into account damages sustained by reason of the absence of such articles while awaiting replacement. It ignores delivery charges, and certainly this court should judicially notice that for a number of years our nation's economy has experienced crippling inflation. The "wholesale cost" paid by a merchant one month with few exceptions is substantially increased each month thereafter.

Valuation determined on the fair market value of the property has ample precedential support and should be the rule followed in the instant case. This court approved the rule in *Central National Bank & Trust Co. v. Central Illinois Light Co.* (1965), 65 Ill. App. 2d 287, 212 N.E.2d 489, and *Behrens v. W. S. Bills & Sons, Inc.* (1972), 5 Ill. App. 3d 567, 283 N.E.2d 1.

■ Lastly, the plaintiff complains that the trial court erred in permitting defendant to introduce evidence of plaintiff's gross sales in months ensuing after the fire. It is the plaintiff's contention that the only purpose of such evidence was to establish that plaintiff was selling property which he had claimed as being destroyed in the fire. Defendant contends this contention has been waived by the plaintiff in that it was not raised in his post-trial motion. We disagree. The plaintiff objected to such evidence during the course of the trial and further assigned its admission as evidence as error in his post-trial motion. A reading of the record establishes that the plaintiff's complaint is well taken. The plaintiff did continue to conduct business as usual after the fire and was able to do so because it was his warehouse that was damaged by the fire, not his store. The evidence of the plaintiff's post-fire gross sales could only serve to confuse and prejudice the jury, and hence its admission was an abuse of the trial court's discretion.

For the reasons set forth the judgment of the Circuit Court of Will County is reversed and this case is remanded with directions and for a new trial on the issue of damages consistent with the principles set forth herein.

Reversed and remanded with directions.

ALLOY and BARRY, JJ., concur.